**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**Roy Rossello, Plaintiff,**

**v.**

**Edgardo Diaz Melendez,**

**Defendant.**

**Case No. 1:25-cv-01699 (MMG)**

**ORAL ARGUMENT REQUESTED**

<u>**MEMORANDUM OF LAW IN SUPPORT MOTION TO DISMISS COMPLAINT**</u>

<u>**AGAINST EDGARDO DIAZ MENENDEZ**</u>

Prado Law Office, LLC
Edwin J. Prado-Galarza (Bar No. EP8202)
111 N. Orange Ave., Suite 800, Unit 849
Orlando, FL 32801
Phone: (407) 420-7926 / (787)977-1411
Email: pradolaw10@gmail.com
Counsel for Defendant Edgardo Diaz Melendez

## **TABLE OF CONTENTS**

I.    Preliminary Statement                                                        6

II.   Background and Allegations                                                   8

      a.  Parties and alleged acts                                                 8

      b.  Procedural History and Jurisdictional Allegations                        9

      c.  GMVA Revival Window and Relevant State Statute                          10

III.  Legal Arguments                                                            12

      a.  The Court Lacks Subject Matter Jurisdiction Pursuant to Rule 12(b)(1)   12

      b.  The Court Lacks Personal Jurisdiction under rule 12(b)(2)               14

            i.   New York's Long Arm Statute (CPLR § 302)                         14

            ii.  Constitutional Due Process Concerns                              15

      c.  The Complaint Fails to state a viable claim                             17

      d.  Complaint Fails to Include a Proper Demand for relief                   21

      e.  Complaint is Independently Barred by the Applicable                     23

          statute of limitations

      f.  Plaintiff Claims are barred by Laches Doctrine                          27

      g.  Constitutional Issues                                                   31

IV.   Conclusion                                                                 36

## Table of Authorities

Case Name                                                                                    Page(s)

*Albany Area Builders Ass'n v. Town of Guilderland*, 74 N.Y.2d 372 (1989)                          30

*Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987)                                   14

*Boreali v. Axelrod*, 71 N.Y.2d 1 (1987)                                                          29

*Breest v. Haggis*, 180 A.D.3d 83 (1st Dep't 2019)                                                18

*Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187 (2d Cir. 1996)                               25, 27

*Costello v. United States*, 365 U.S. 265 (1961)                                                 26

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104                                                     20

*Doe v. Indyke*, 465 F. Supp. 3d 452 (S.D.N.Y. 2020)                                             31

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81 (2d Cir. 2013)                      12

*Engelman v. Rofe*, 194 A.D.3d 26 (1st Dep't 2021)                                               31

*Garcia v. Bloomberg*, 662 Fed. Appx. 50                                                         18

*Ganieva v. Black*, 216 A.D.3d 424 (1st Dep't 2023)                                              31

*Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160 (2d Cir. 1989)                               24

*Greco v. Ulmer & Burne L.L.P.,* 23 Misc. 3d 875, 141 S. Ct. 1017 (2021)                         13

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945)                                       13

*Ivani Contracting Corp. v. City of New York*, 103 F.3d 257 (2d Cir. 1997)                        25

*Jancyn Mfg. Corp. v. County of Suffolk*, 71 N.Y.2d 91 (1987)                                     29

*John Birch Soc'y v. Nat'l Broad. Co.*, 377 F.2d 194 (2d Cir. 1967)                              11

*Landgraf v. USI Film Products*, 511 U.S. 244 (1994)                                          17, 32

*Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44                          11

*Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577 (1998)                        17, 23, 33

| Case Name | Page(s) |
|---|---|
| *Matter of World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 30 N.Y.3d 377 (2017) | 32 |
| *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 | 20 |
| *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30 (1989) | 11 |
| *Overall v. Estate of Klotz*, 52 F.3d 398 (2d Cir. 1995) | 22, 27 |
| *Parker v. Alexander*, 2025 WL 268436 (S.D.N.Y. Jan. 22, 2025) | 10, 16, 30 |
| *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012) | 31 |
| *United States v. Morrison*, 529 U.S. 598 (2000) | 30 |
| *Velez v. Reynolds*, 325 F. Supp. 2d 293 (S.D.N.Y. 2004) | 24 |

**Table of Authorities – Statutes and Legislation**

| Statute / Law | Page(s) |
|---|---|
| 28 U.S.C. § 1332 | 7, 10,11, |
| CPLR § 214(5) | 22 |
| CPLR § 214-g (Child Victims Act - CVA) | 8, 9, 23, 25 |
| CPLR § 214-j (Adult Survivors Act - ASA) | 29, 32 |
| CPLR § 215(3) | 22 |
| CPLR § 302(a)(2) | 13 |
| Fed. R. Civ. P. 12(b)(1) | 4,10 |
| Fed. R. Civ. P. 12(b)(2) | 12,14 |
| Fed. R. Civ. P. 12(b)(6) | 15, 19,20 |

| Statute / Law | Page(s) |
|---|---|
| Fed. R. Civ. P. 8(a)(3) | 5, 19 |
| Local Law 2022/021 (GMVA revival) | 8 |
| N.Y. Const. art. IX, § 2 (Home Rule) | 29 |
| N.Y.C. Admin. Code § 10-1101 et seq. (GMVA) | 4, 15, 30 |

## I.    PRELIMINARY STATEMENT

Plaintiff Roy Rossello has brought this action asserting claims nearly four decades old under New York City's Victims of Gender-Motivated Violence Protection Law ("GMVA"), N.Y.C. Admin. Code § 10-1101 et seq. Specifically, Plaintiff alleges that Defendant Edgardo Diaz Melendez sexually abused him repeatedly between approximately 1983 and 1986, during Plaintiff's teenage years as a member of the internationally renowned Puerto Rican music group Menudo. Plaintiff seeks to invoke the GMVA's revival provision, enacted by the New York City Council in 2022, to assert these long-expired claims.

**First**, Plaintiff attempts to invoke this Court's federal diversity jurisdiction pursuant to 28 U.S.C. § 1332, yet his jurisdictional allegations are facially inadequate. Plaintiff merely alleges residency in Florida and Defendant's residency in Puerto Rico, but residency alone is insufficient to establish citizenship for diversity jurisdiction purposes. Plaintiff has failed to affirmatively plead domicile or citizenship. This omission alone mandates dismissal under Fed. R. Civ. P. 12(b)(1).

**Second**, even assuming diversity jurisdiction were adequately pled, this Court lacks personal jurisdiction over Defendant Diaz. Defendant is and has always been a lifelong resident and domiciliary of Puerto Rico, with no ongoing or systematic contacts with New York. Plaintiff's claim of personal jurisdiction is exclusively grounded in isolated alleged events occurring approximately forty years ago. Exercising jurisdiction over Defendant under such attenuated and stale circumstances would violate fundamental principles of due process, rendering dismissal appropriate under Fed. R. Civ. P. 12(b)(2).

**Third**, and critically, the Complaint fails to state a legally viable claim under the GMVA. Plaintiff's claims are clearly time-barred and cannot be revived by the local law's revival window because such local revival is preempted by the comprehensive framework established by New York State's Child Victims Act ("CVA") and Adult Survivors Act ("ASA"). New York courts, including recent persuasive decisions from this District, have expressly found that these state statutes occupy the field and preempt conflicting local revival provisions such as the GMVA's. Additionally, Plaintiff's attempt to retroactively apply the GMVA to pre-2000 conduct violates established principles of statutory interpretation and due process.

Moreover, even if Plaintiff could overcome these significant timing and constitutional barriers, his GMVA claim still fails substantively because he has not plausibly pled the requisite element of gender-based animus. The GMVA was specifically enacted to remedy violence motivated by gender-based bias or hatred, yet Plaintiff alleges no facts supporting that Defendant's alleged actions were driven by such animus toward Plaintiff's gender. Plaintiff's allegations, instead, describe opportunistic exploitation devoid of the necessary element of gender-based hostility.

In addition to these principal arguments, the Complaint suffers from further procedural and substantive defects warranting dismissal, including its failure to provide a proper demand for relief as required by Federal Rule of Civil Procedure 8(a)(3). Also, the equitable doctrine of laches independently bars Plaintiff's claims due to unreasonable and prejudicial delay in bringing this suit nearly four decades after the alleged conduct. Finally, the extraordinary revival of Plaintiff's claims raises constitutional questions about the extent of local legislative authority and compliance with constitutional due process constraints.

For all these reasons, each independently sufficient, Defendant respectfully requests that the Court grant this Motion and dismiss Plaintiff's Complaint in its entirety with prejudice.

## II.    BACKGROUND AND ALLEGATIONS

### A.  Parties and Alleged Acts

Plaintiff Roy Rossello is a former member of the Puerto Rican boy band Menudo, which gained significant international fame and success in the early to mid-1980s. According to Plaintiff's Complaint, Rossello joined Menudo around 1983 at the approximate age of thirteen and remained a member of the group until approximately 1986. During this time, Menudo toured extensively throughout the United States and internationally, engaging in numerous public appearances, concerts, and television performances.

Defendant Edgardo Diaz Melendez is alleged to be Menudo's founder, primary manager, and producer, responsible for recruiting and managing the band's young members. Plaintiff claims Diaz wielded considerable authority and control over the group members' personal and professional lives, including overseeing their travel arrangements, accommodations, appearances, and personal interactions. The Complaint explicitly identifies Diaz as a lifelong resident and

domiciliary of Puerto Rico, with no present or ongoing contacts in New York, aside from alleged isolated incidents that occurred decades ago during Menudo's tours.

Plaintiff's allegations center upon a series of sexual abuses purportedly committed by Diaz against Rossello. According to the Complaint, these alleged abuses occurred with disturbing frequency—reportedly "three to four times per week"—over approximately three years between 1983 and 1986. The Complaint emphasizes several specific alleged incidents said to have occurred within the Southern District of New York. These purported incidents include claims that Defendant Diaz sexually assaulted Plaintiff during visits to New York City connected with Menudo's professional appearances, such as performances on prominent television programs, including the "Merv Griffin Show," and other high-profile entertainment events occurring around 1984. Plaintiff alleges these assaults primarily occurred in hotel rooms where Menudo was housed during their New York visits.

Defendant Diaz categorically denies these allegations, asserting unequivocally that no such sexual abuse or misconduct ever occurred.

### B. Procedural History and Jurisdictional Allegation

Plaintiff filed this civil action on February 27, 2025, invoking the diversity jurisdiction of this Court under 28 U.S.C. § 1332. In doing so, Plaintiff's Complaint specifically claims that he is a "resident of Florida" and that Defendant Diaz is a "resident of Puerto Rico." However, as detailed in the legal argument section, residency alone is insufficient to establish citizenship for purposes of diversity jurisdiction. The Complaint is notably silent regarding the domicile or citizenship of both parties, failing to affirmatively allege facts necessary to support diversity jurisdiction. The

Complaint further claims that the amount in controversy exceeds the jurisdictional threshold of $75,000, although this is not specifically enumerated or supported by detailed factual allegations.

Venue and personal jurisdiction in the Southern District of New York are alleged to be proper based solely on Plaintiff's claims that a substantial portion of the alleged events (the sexual assaults) occurred within this judicial district. Defendant contests the factual basis of these allegations, asserting no current or continuing jurisdictional contacts with New York and highlighting the substantial passage of time—nearly four decades—since the purported acts occurred.

Critically, Plaintiff's Complaint explicitly relies on the recently enacted local revival provision under the New York City Victims of Gender-Motivated Violence Protection Law ("GMVA"), amended in 2022 by Local Law 2022/021. Plaintiff invokes this revival window as a basis to revive claims that would otherwise have long expired under applicable statutes of limitation. Specifically, the GMVA revival window Plaintiff relies upon opened on March 1, 2023, and is scheduled to close on March 1, 2025. Plaintiff filed his Complaint just days prior to the closing of this revival period. Notably, Plaintiff did not utilize previous revival opportunities specifically enacted by New York State, including the Child Victims Act ("CVA"), which provided a statewide revival period explicitly designed for claims involving childhood sexual abuse and was open from August 14, 2019, until August 14, 2021. Plaintiff, despite falling squarely within the scope of the CVA, inexplicably elected not to file during this earlier statutory revival window.

### C.  GMVA Revival Window and Relevant State Statute

The GMVA, originally enacted by the New York City Council in 2000, created a civil cause of action for victims of violence motivated by gender-based animus. In January 2022, New York

City amended the GMVA through Local Law 2022/021, significantly expanding its statute of limitations from seven to nine years, and, crucially, creating a two-year-and-six-month "look-back" revival window for previously expired GMVA claims. The window specifically permitted filing of claims that were otherwise barred by the statute of limitations, beginning on March 1, 2023, and closing on March 1, 2025.

However, prior to this municipal amendment, the New York State Legislature had already enacted comprehensive legislation to address the revival of claims arising from sexual assault and abuse. The Child Victims Act ("CVA"), codified at CPLR § 214-g, was signed into law in 2019, creating a clearly defined and limited revival window from August 14, 2019, to August 14, 2021. The CVA explicitly applied to civil claims of childhood sexual abuse, such as those alleged by Plaintiff Rossello, who claims he was a minor when the alleged abuse occurred. Despite this explicit opportunity for revival, Plaintiff elected not to pursue his claims within the CVA's timeframe.

Subsequently, in 2022, the State Legislature enacted the Adult Survivors Act ("ASA"), codified at CPLR § 214-j, providing another finite revival window—this time one year, from November 24, 2022, to November 24, 2023—specifically for adult victims of sexual offenses. The enactment of the CVA and ASA clearly demonstrated the State Legislature's intent to comprehensively regulate and occupy the field of revival statutes related to sexual abuse claims statewide, effectively preempting any local ordinances, such as the GMVA's extended municipal revival window, that sought to independently revive claims outside of the state's statutory framework.

Plaintiff, notwithstanding his explicit eligibility under the CVA, chose to bypass this specifically tailored revival window provided by state law, opting instead to wait and assert his

claims under the municipal GMVA revival provision. This strategic choice, Plaintiff argues, now permits revival of his decades-old claims, even though the allegations clearly predate the GMVA's original enactment and its subsequent amendment.

Defendant maintains that the City's extended revival window is preempted by state law. Judge Lewis A. Kaplan, in a recent decision from this District in Parker v. Alexander, 2025 WL 268436 (S.D.N.Y.), persuasively held that the CVA and ASA occupied the field of revival statutes for sexual abuse claims, explicitly preempting conflicting local revival provisions such as the GMVA's. Consequently, the City's attempt to extend revival periods beyond those established by the state legislature is legally impermissible and ineffective to revive Plaintiff's claims here. Furthermore, retroactively applying the GMVA to alleged conduct predating its original enactment raises serious constitutional concerns, implicating both statutory construction principles and fundamental due process rights.

In sum, Plaintiff's decision to rely on the local GMVA revival statute rather than pursuing relief during the state-established CVA window renders his claims both substantively and procedurally flawed. These critical timing and jurisdictional defects require dismissal of Plaintiff's Complaint with prejudice, as detailed further in the legal arguments below.

## III.   LEGAL ARGUMENTS

### A.  The Court Lacks Subject Matter Jurisdiction Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and must ensure they have authority over the cases brought before them. It is axiomatic that the burden to establish subject matter jurisdiction rests squarely with the party invoking the jurisdiction of the federal court—in this instance, the Plaintiff. Under 28 U.S.C. § 1332, federal courts have jurisdiction over civil actions only where

there is complete diversity of citizenship among the parties and the amount in controversy exceeds the statutory threshold of $75,000.

Plaintiff's Complaint seeks to invoke diversity jurisdiction under § 1332, alleging simply that Plaintiff is a resident of Florida and Defendant a resident of Puerto Rico. However, under well-established law, mere residency is insufficient to establish citizenship for purposes of diversity jurisdiction. Citizenship, for jurisdictional purposes, is based upon a person's domicile, defined as the location where a person has established a fixed residence with the intention to remain indefinitely. See *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.,* 87 F.3d 44, 47 (2d Cir. 1996). The United States Supreme Court has clearly stated that "[f]or adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).

The Complaint fails entirely to allege Plaintiff's or Defendant's domicile. The vague assertion of residency in Florida and Puerto Rico, without more, is insufficient to establish that either party is domiciled in the respective jurisdictions. Indeed, it is well settled within the Second Circuit that a mere assertion of residency does not satisfy the plaintiff's affirmative burden to plead citizenship. See *John Birch Soc'y v. Nat'l Broad. Co*., 377 F.2d 194, 199 (2d Cir. 1967) ("Residence alone is insufficient to establish domicile for purposes of diversity jurisdiction."). Thus, Plaintiff's complaint is jurisdictionally defective on its face.

In addition, even assuming arguendo that Plaintiff could amend his pleading to properly allege citizenship, jurisdictional questions persist. Puerto Rico, though not a U.S. state, is deemed equivalent to a state for diversity jurisdiction purposes pursuant to 28 U.S.C. § 1332(e). Assuming Plaintiff indeed maintains domicile in Florida and Defendant Diaz maintains domicile in Puerto

Rico, complete diversity theoretically could exist. However, as currently pleaded, the Complaint is deficient and defective on its face, requiring at minimum amendment or clarification to properly establish jurisdictional facts.

Finally, although Plaintiff asserts generally that the amount in controversy exceeds $75,000, no specific facts or details have been provided in the Complaint to support this jurisdictional threshold. A conclusory assertion that jurisdictional requirements are met is insufficient to sustain a federal case. Thus, the Complaint fails to provide the Court with any adequate basis for asserting federal subject matter jurisdiction.

Because federal courts have an obligation to independently assess jurisdiction, dismissal of Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) is appropriate. The jurisdictional defects described herein are fundamental and unambiguous, and they necessitate dismissal or, at minimum, amendment to cure these fatal deficiencies.

## B. The Court Lacks Personal Jurisdiction Over Defendant Under Rule 12(b)(2)

In addition to lacking subject matter jurisdiction, this Court separately lacks personal jurisdiction over Defendant Diaz. The Plaintiff bears the burden of establishing personal jurisdiction, and must show, by prima facie evidence, that the exercise of personal jurisdiction is appropriate both under New York State's long-arm statute (CPLR § 302) and under constitutional principles of due process. See *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84–85 (2d Cir. 2013).

### 1. New York's Long-Arm Statute (CPLR § 302)

CPLR § 302(a)(2) authorizes personal jurisdiction over non-domiciliary defendants who commit tortious acts while physically present in New York State. Plaintiff's allegations that Defendant committed sexual assaults in New York City hotels between 1983 and 1986 ostensibly satisfy the minimal threshold requirement of CPLR § 302(a)(2), as the alleged intentional torts purportedly occurred while Defendant was physically present in New York.

Defendant, however, vigorously and categorically denies these allegations, emphasizing the extreme difficulty and prejudice inherent in defending such decades-old claims. Even if Plaintiff's allegations, for the purposes of jurisdictional analysis, must be taken as true at this stage, the exercise of personal jurisdiction under these circumstances raises serious constitutional due process concerns.

2. **Constitutional Due Process Concerns**

Personal jurisdiction must also comport with the constitutional requirements of due process under the Fourteenth Amendment. To satisfy due process, Defendant must have "minimum contacts" with New York such that maintenance of this suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In assessing specific jurisdiction, courts examine whether the defendant "purposefully availed" himself of the forum's privileges and protections, thereby making it foreseeable that he could be haled into court there. See *Greco v. Ulmer & Burne L.L.P., 23 Misc. 3d 875,* 141 S. Ct. 1017, 1024–25 (2021).

While Plaintiff's allegations, if accepted as true, theoretically might satisfy the minimum contacts standard, the reasonableness prong of the due process analysis strongly militates against

exercising jurisdiction. Under *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 113–14 (1987), courts assess whether asserting jurisdiction is reasonable, considering factors such as the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the judicial system's interest in efficient resolution, and the shared interest of states in furthering social policies.

Here, Defendant Diaz faces severe prejudice due to Plaintiff's nearly four-decade delay in asserting these claims. Evidence has inevitably been lost or degraded, witnesses have disappeared or passed away, and the ability to effectively mount a defense has been drastically compromised. Further, Defendant Diaz has no ongoing or recent contacts with New York; he has been domiciled in Puerto Rico continuously since the alleged events. Forcing Diaz to defend himself in a New York forum under these circumstances would create an unreasonable and constitutionally impermissible burden.

Moreover, New York's interests in adjudicating this stale dispute are minimal. Plaintiff resides in Florida, the alleged events are decades old, and New York State's interests were explicitly satisfied by prior legislative actions such as the CVA and ASA, which specifically addressed similar claims. The Plaintiff's conscious choice to bypass the state-provided remedies and pursue a belated action under the GMVA significantly diminishes any forum interest. Additionally, Plaintiff's interests in effective relief could reasonably be served by pursuing relief in Puerto Rico, where many of the alleged incidents, witnesses, and evidence would more logically reside.

In short, exercising personal jurisdiction over Defendant Diaz would violate fundamental fairness and constitutional due process. Accordingly, the Complaint must be dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2).

### C. The Complaint Fails to State a Viable Claim Under the GMVA Pursuant to Rule 12(b)(6)

Plaintiff asserts a single cause of action under the New York City Victims of Gender-Motivated Violence Protection Law ("GMVA"), codified at N.Y.C. Admin. Code § 10-1101 et seq. However, Plaintiff's claim under the GMVA is fatally flawed on several independent grounds, each warranting dismissal under Federal Rule of Civil Procedure 12(b)(6).

### 1. Plaintiff's Claim is Time-Barred and Preempted by State Law

Plaintiff's reliance on the GMVA's local revival provision, enacted by New York City in 2022, to resurrect claims from alleged incidents occurring nearly forty years ago, is fundamentally improper and legally impermissible. This recent municipal revival provision, Local Law 2022/021, purports to allow filing of otherwise time-barred claims related to gender-motivated violence through a temporary "look-back" window extending from March 1, 2023, to March 1, 2025. Plaintiff contends his Complaint, filed February 27, 2025, falls within this window.

However, Plaintiff's attempt to leverage this local revival statute directly conflicts with—and is thereby preempted by—New York State's established statutory revival frameworks, namely the Child Victims Act ("CVA") and the Adult Survivors Act ("ASA"). The CVA, codified at CPLR § 214-g, provided a comprehensive statewide revival window specifically addressing claims of childhood sexual abuse, effective from August 14, 2019, to August 14, 2021. The subsequent ASA, codified at CPLR § 214-j, similarly established a statewide revival window for claims arising from adult sexual offenses between November 24, 2022, and November 24, 2023.

New York State courts, including persuasive authority from this very District, have conclusively held that these state revival statutes fully occupy the legislative field and preempt conflicting local laws seeking to expand or extend revival periods. Judge Lewis A. Kaplan recently reaffirmed this principle in *Parker v. Alexander*, 2025 WL 268436 (S.D.N.Y. Jan. 22, 2025), explicitly concluding that state legislative action occupies the field, leaving no room for independent local revival statutes such as the GMVA. Thus, the New York City Council's attempt to independently legislate revival through the GMVA's extended local revival window conflicts irreconcilably with the State's comprehensive and exclusive revival framework.

Plaintiff Rossello, whose alleged abuses occurred during childhood, unquestionably fell within the CVA's revival period but consciously or negligently failed to avail himself of this statutory remedy. Having deliberately forgone his available state-sanctioned remedy, Plaintiff now seeks to circumvent the State's explicit legislative choices by asserting claims under a conflicting local statute. Such circumvention is precisely what the State Legislature sought to prevent through its careful and deliberate enactment of exclusive revival windows. Consequently, the GMVA revival provision Plaintiff seeks to invoke is rendered void as preempted by state law, leaving Plaintiff's claims irrevocably time barred.

## 2. Retroactive Application of GMVA to Pre-2000 Conduct is Impermissible

Even apart from the clear preemption issue, Plaintiff's attempt to apply the GMVA retroactively to conduct occurring in the mid-1980s violates fundamental principles of statutory construction and constitutional due process protections. It is a cornerstone of statutory interpretation and constitutional law that laws creating new substantive liabilities are presumed to

apply prospectively, absent explicit legislative intent to the contrary. *See Majewski v. Broadalbin-Perth Cent. Sch. Dist.,* 91 N.Y.2d 577, 584 (1998) ("Retroactivity is not favored in the law and legislative enactments will not be given retroactive effect unless unequivocally so intended.").

The GMVA, originally enacted in 2000, introduced a new substantive civil cause of action specifically addressing gender-motivated violence. Nothing in the GMVA's legislative history, original statutory language, or its subsequent 2022 amendments explicitly authorizes retroactive application to events occurring prior to its original enactment date. Indeed, courts analyzing analogous revival provisions consistently reject retroactive application of statutes to pre-enactment conduct, holding such applications unconstitutional under principles of due process because they unfairly upset settled expectations and repose in liability. See *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994) ("The presumption against statutory retroactivity is founded upon sound considerations of general justice.").

Here, Defendant Diaz reasonably relied on established statutes of limitation, knowing that potential claims stemming from conduct alleged to have occurred nearly two decades prior to the GMVA's enactment were long expired and non-actionable. Allowing Plaintiff to now invoke a municipal law enacted decades later to create liability where none previously existed would contravene principles of fundamental fairness and due process. Because Plaintiff's claims arose well before the GMVA's existence, its retroactive application here is impermissible as a matter of statutory interpretation and due process. Accordingly, Plaintiff's Complaint must be dismissed with prejudice on this independent basis as well.

**3.  Plaintiff Fails to Plead Gender-Based Animus, an Essential Element of the GMVA**

Additionally, Plaintiff's Complaint fails substantively to plead facts sufficient to establish an essential element of any GMVA claim gender-based animus. The GMVA explicitly targets violence motivated specifically by gender-based hatred or animosity, requiring plaintiffs to demonstrate through factual allegations that defendant's violent actions were committed "because of gender," and "due, at least in part, to animus based on the victim's gender." N.Y.C. Admin. Code § 10-1103.

Plaintiff's Complaint, however, contains only a conclusory recitation of the GMVA's statutory elements, devoid of supporting factual allegations showing Defendant acted with any gender-based hostility or animus. The Complaint's narrative depicts alleged opportunistic sexual exploitation driven by personal or prurient motives, not the kind of gender-specific bias or hatred necessary to support a claim under the GMVA. Courts addressing GMVA claims have consistently held that merely alleging violent or exploitative conduct is insufficient; plaintiffs must specifically plead facts demonstrating that defendant's conduct was motivated by gender-based animosity. See *Breest v. Haggis*, 180 A.D.3d 83, 94 (1st Dep't 2019) (clarifying that while sexual assault may imply gender animus in certain contexts, plaintiffs still must allege facts demonstrating gender-based hostility).

Here, the Complaint entirely lacks allegations of statements, behavior, or patterns indicative of gender-specific animosity or hostility by Defendant Diaz toward Plaintiff's gender (male). The Complaint's assertions reflect opportunistic behavior unrelated to gender-based hatred, thereby failing to state a viable claim under the GMVA. Courts dismiss GMVA claims when plaintiffs fail to sufficiently plead this requisite element of gender-based animus. See, e.g *Garcia v. Bloomberg,* 662 Fed. Appx. 50 (dismissing GMVA claim absent specific allegations showing gender-based animus rather than mere general violence or exploitation).

Thus, even assuming Plaintiff's claims were timely and properly subject to the GMVA's revival provision—which they are not—Plaintiff's Complaint substantively fails to meet the pleading requirements of the GMVA. Accordingly, Plaintiff's GMVA claim must be dismissed with prejudice on this additional and independent ground pursuant to Rule 12(b)(6).

Plaintiff's GMVA claim is legally deficient on multiple independent grounds, each requiring dismissal with prejudice. Plaintiff's reliance on the GMVA's revival window is invalid as preempted by state law, its retroactive application to pre-2000 conduct is impermissible, and Plaintiff's Complaint fails substantively to plead the essential GMVA element of gender-based animus. Given these clear and fatal deficiencies, Plaintiff's Complaint must be dismissed in its entirety pursuant to Rule 12(b)(6).

## D. The Complaint Fails to Include a Proper Demand for Relief as Required by Rule 8(a)(3)

Federal Rule of Civil Procedure 8(a)(3) imposes a straightforward but critical pleading requirement on plaintiffs: every complaint filed in federal court must contain a clear demand for the relief sought. Specifically, the rule provides that a complaint must include "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3). This requirement is not merely procedural formality; rather, it serves the fundamental purpose of providing defendants fair notice of the nature and extent of potential liability and exposure, ensuring due process, and allowing defendants to properly evaluate and respond to the claims asserted against them.

Courts in the Second Circuit and elsewhere have consistently enforced the clear mandates of Rule 8(a)(3), emphasizing that a failure to properly demand relief in a complaint constitutes a

significant pleading deficiency that can and should lead to dismissal under Fed. R. Civ. P. 12(b)(6).
See, e.g., *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184.

Plaintiff's Complaint in this case, however, fails conspicuously to satisfy Rule 8(a)(3)'s
essential requirement. While Plaintiff broadly asserts a claim under the New York City Victims of
Gender-Motivated Violence Protection Law (GMVA), nowhere in the Complaint does Plaintiff
clearly articulate or specify the precise relief sought—whether monetary damages, injunctive
relief, declaratory relief, attorney's fees, costs, or other equitable remedies. The Complaint is
notably silent as to any specific monetary amount demanded or even a clear statement that
monetary damages or any other specific form of relief are sought at all.

The omission of a proper "ad damnum" clause or explicit prayer for relief is particularly
egregious in a case such as this one, involving extremely stale allegations dating back nearly forty
years, potentially exposing the Defendant to considerable prejudice. The absence of a clearly stated
prayer for relief substantially hampers Defendant's ability to meaningfully evaluate the risks and
consequences of litigation and undermines fundamental principles of fair notice and procedural
fairness upon which our adversarial judicial system relies.

Courts faced with similar deficiencies have not hesitated to dismiss complaints or require
their amendment to comply with Rule 8(a)(3). For example, in  *DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104, the court dismissed a complaint without prejudice for failure to comply with Rule
8(a)(3) because the plaintiff failed to articulate what specific relief was sought. The court
underscored the critical need for defendants to have clear notice of the stakes of litigation, noting
that compliance with Rule 8(a)(3) is essential for defendants to adequately respond to claims.

In the present case, Plaintiff's omission of a clearly stated prayer for relief has left Defendant Diaz without notice of what exactly is being sought against him. This omission is prejudicial, particularly in the context of decades-old allegations, where uncertainty regarding the scope and scale of potential liability significantly complicates and hampers Defendant's ability to fairly evaluate and respond to the Complaint.

Therefore, pursuant to Rule 8(a)(3) and established judicial precedent in the Second Circuit, Plaintiff's Complaint must be dismissed for failure to state a claim upon which relief can be granted. At a minimum, Plaintiff must be compelled by this Court to amend his Complaint promptly to include a clear and specific demand for relief, clarifying whether he seeks monetary damages, declaratory or injunctive relief, or other remedies. Absent compliance with this fundamental procedural requirement, the Complaint fails to present a justiciable controversy properly before this Court.

Given Plaintiff's existing substantive deficiencies, including jurisdictional defects, untimeliness, and substantive pleading failures as detailed above, the omission of a proper demand for relief further reinforces the necessity for dismissal of Plaintiff's Complaint. Thus, the Court should dismiss Plaintiff's Complaint or, alternatively, order Plaintiff to cure this pleading deficiency immediately.

### E.  The Complaint is Independently Barred by the Applicable Statute of Limitations

Even assuming Plaintiff could otherwise clear the significant jurisdictional and substantive pleading hurdles previously discussed—which he cannot—Plaintiff's claims independently fail because they are undeniably time-barred by applicable statutes of limitations. It is well established under New York law that statutes of limitations serve critical functions, including providing

defendants with repose after a defined period and ensuring litigation occurs while evidence and memories remain available and reliable. See *Overall v. Estate of Klotz*, 52 F.3d 398, 402 (2d Cir. 1995) (noting statutes of limitations protect defendants and the judicial system from unfair prejudice resulting from stale claims).

Here, Plaintiff attempts to litigate claims arising from alleged sexual abuses occurring nearly four decades ago—between approximately 1983 and 1986. Under the laws of New York applicable at the time these alleged acts occurred, claims arising from intentional torts such as assault, battery, intentional infliction of emotional distress, or similar claims were required to be filed within strictly defined limitations periods:

1) Assault and battery claims were subject to a one-year statute of limitations under CPLR § 215(3).

2) Intentional infliction of emotional distress claims was subject to a one-year limitations period under CPLR § 215(3), or at most three years if framed as negligence under CPLR § 214(5).

3) Claims for general personal injuries based on negligence or non-intentional tortious conduct were subject to a three-year limitations period under CPLR § 214(5).

Applying even the most generous statutory interpretation available, the latest possible accrual date for Plaintiff's claims would be no later than 1986, when the alleged abuse purportedly ceased. Thus, under any applicable theory, Plaintiff's claims expired decades ago—specifically, no later than the late 1980s or early 1990s, depending on the claim asserted.

Plaintiff now attempts to invoke New York City's Victims of Gender-Motivated Violence Protection Law ("GMVA"), originally enacted in 2000, to overcome these clear statutory bars

through a special revival provision introduced by the City Council in 2022. However, as extensively addressed previously in this Motion, this attempted revival is legally impermissible due to preemption by the New York State Legislature's comprehensive statutory scheme established by the Child Victims Act ("CVA") and Adult Survivors Act ("ASA"). The CVA specifically opened a clearly defined and limited revival window from August 14, 2019, until August 14, 2021, explicitly addressing precisely the kind of childhood sexual abuse claims Plaintiff now seeks to assert. Plaintiff consciously chose not to pursue relief within this legislatively created window.

Moreover, Plaintiff's attempt to use the GMVA's revival provision to revive claims predating the original enactment of the GMVA (in 2000) is independently flawed. It is a fundamental rule of statutory interpretation that a revival statute cannot revive a cause of action that was not legally cognizable at the time of the original act. See *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 584 (1998). The GMVA was enacted in 2000, creating a new cause of action for gender-motivated violence that did not exist previously under New York law. Plaintiff seeks to use the 2022 GMVA revival amendment to resurrect claims arising from conduct occurring in the mid-1980s, fully 15 years before the GMVA's enactment. Such retroactive application to pre-enactment conduct is impermissible under both principles of statutory construction and constitutional due process protections.

Even if, arguendo, the GMVA revival provision were valid (which Defendant strongly contests), Plaintiff's claim still fails because he did not file within the revival window as defined by the local law itself, which explicitly provides that revived claims must be commenced no earlier than six months and no later than two years and six months after September 1, 2022 (Local Law 2022/021). Plaintiff's Complaint was filed at the very end of this revival period, just days before

its expiration. The narrow and selective invocation of this revival provision, long after the expiration of applicable limitations periods, further underscores the inequities and due process concerns inherent in Plaintiff's approach.

Federal courts consistently dismiss complaints on statute-of-limitations grounds when it is evident from the face of the complaint that the statutory period has expired, and no legally recognized tolling or revival statute applies. See *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) (affirming dismissal of complaint barred by applicable statutes of limitations); *Velez v. Reynolds*, 325 F. Supp. 2d 293, 305–06 (S.D.N.Y. 2004) (dismissal under Rule 12(b)(6) appropriate where complaint clearly demonstrates claims are barred by applicable statutes of limitation).

Additionally, courts have recognized that allowing claims to proceed after decades-long delays defeats the fundamental purposes underlying statutes of limitations: providing defendants repose and preventing unfair prejudice resulting from deteriorating evidence and faded memories. The policy considerations supporting strict application of limitations periods are heightened in cases, such as this, involving alleged misconduct from nearly four decades prior. Defendant Diaz faces substantial prejudice given the passage of time, loss or unavailability of evidence, and inevitable difficulties in mounting an effective defense to allegations arising from the distant past.

Plaintiff had ample opportunity to seek relief within legislatively provided windows (including the CVA) explicitly created by New York State law to revive claims precisely of the nature Plaintiff now seeks to pursue. Plaintiff's deliberate or negligent failure to avail himself of these statutory remedies does not justify an attempt to circumvent the clear statutory limitations through reliance on a later-enacted local revival provision that directly conflicts with state law and fundamental constitutional protections.

In sum, Plaintiff's claims asserted in this action are unequivocally and independently barred by the statute of limitations, and Plaintiff's belated attempt to invoke the GMVA's municipal revival provision is invalid as a matter of statutory interpretation, preemption principles, and constitutional due process. Accordingly, Plaintiff's Complaint should be dismissed in its entirety as time-barred under Federal Rule of Civil Procedure 12(b)(6).

## F.  Plaintiff's Claims are Barred by the Doctrine of Laches Due to Unreasonable Delay and Severe Prejudice

In addition to the statutory barriers previously discussed, Plaintiff's claims are independently barred by the equitable doctrine of laches. Under New York and federal law, laches constitutes a recognized affirmative equitable defense that bars claims when a plaintiff's unreasonable delay in asserting rights prejudices a defendant. The defense of laches applies where: (1) a plaintiff unreasonably delays initiating legal action, and (2) the delay prejudices the defendant's ability to mount an effective defense. See *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 259 (2d Cir. 1997) ("Laches is based on the maxim, vigilantibus non dormientibus jura subveniunt (the law aids the vigilant, not those who sleep on their rights)."); see also *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (2d Cir. 1996).

### 1.  Plaintiff's Unreasonable Delay

Plaintiff Rossello alleges misconduct occurring nearly four decades ago—specifically from approximately 1983 to 1986. Despite claiming severe and ongoing injuries, Plaintiff inexplicably delayed initiating any legal action for approximately 40 years. Plaintiff bypassed clear opportunities provided by statutory revival windows such as the Child Victims Act ("CVA"), enacted specifically to revive and address precisely the type of childhood abuse allegations

Plaintiff asserts. Instead, Plaintiff has chosen, decades after the alleged events, to assert his claims under a recent municipal revival statute (GMVA), enacted in 2022—long after his original statutory periods expired and after earlier revival windows specifically tailored for his claims were closed.

Courts applying laches have consistently held that plaintiffs cannot reasonably justify extreme delays, particularly when revival statutes have provided explicit and finite windows specifically designed to address past abuses or wrongs. The United States Supreme Court, addressing the doctrine of laches, explained that a plaintiff's delay is presumptively unreasonable when statutory or equitable opportunities to pursue the claim previously existed but were not utilized. See *Costello v. United States*, 365 U.S. 265, 282 (1961) ("Laches requires proof of a lack of diligence by the party against whom the defense is asserted.").

Here, Plaintiff Rossello had numerous opportunities and ample notice of his legal rights, especially during the enactment and highly publicized availability of the CVA's revival window from 2019 to 2021. Plaintiff deliberately or negligently elected not to utilize that opportunity. Instead, Plaintiff inexplicably waited decades, invoking a municipal revival statute enacted in 2022 to assert claims arising from the mid-1980s. This nearly four-decade delay, particularly after the statutory and widely publicized availability of a clearly applicable revival window, cannot be viewed as anything but unreasonable and inexcusable under the doctrine of laches.

2. **Severe Prejudice to Defendant Diaz**

Equally critical, Plaintiff's extraordinary delay in asserting these claims has caused severe, irreparable prejudice to Defendant Diaz. Defendant faces profound obstacles in preparing a defense to allegations that purportedly occurred nearly 40 years ago. Essential evidence, including

documents, physical records, travel records, receipts, hotel registrations, eyewitnesses, and other pertinent evidence, is now inevitably lost, destroyed, degraded, or irretrievably unavailable. Witnesses who might have provided relevant testimony have passed away or are no longer available, and memories of those who remain will unquestionably have faded significantly with the passage of decades.

This deterioration of evidence and loss of witnesses directly undermines Defendant's ability to meaningfully investigate or effectively respond to Plaintiff's claims. Courts regularly recognize that a defendant's inability to marshal necessary evidence and effectively defend against claims asserted long after applicable statutes of limitation have expired constitutes significant prejudice. The Second Circuit emphasized that "[a] showing of prejudice is essential to establish laches," and the prejudice element is typically satisfied where, as here, the extraordinary passage of time demonstrably hampers a defendant's ability to adequately defend against the claims. *See Conopco, Inc.*, 95 F.3d at 192 (2d Cir. 1996).

Moreover, allowing Plaintiff's claims to proceed at this juncture would contravene fundamental fairness and principles underlying statutes of limitation, which are designed precisely to prevent defendants from facing indefinite exposure to stale claims, compromised defenses, and prejudicial litigation. See *Overall v. Estate of Klotz*, 52 F.3d 398, 402 (2d Cir. 1995) ("Statutes of limitations represent a legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.").

3. **Applicability of Laches in Revival Context**

Plaintiff may argue that laches should not apply given the municipal revival provision invoked here. Indeed, courts sometimes hold that laches typically does not bar actions explicitly authorized by revival statutes. See, *Doe v. Schlesinger*, 2025 NY Slip Op 25149 (Sup. Ct.). However, the unique facts of this case distinguish it significantly from those decisions. Unlike cases involving timely compliance with revival statutes enacted explicitly to provide clear and defined windows for previously barred claims, Plaintiff here deliberately or negligently bypassed multiple opportunities—including the state-created revival period of the CVA—to timely assert his claims.

Plaintiff's strategic choice to wait until the closing moments of a belated local revival window—after decades-long delays and after repeatedly failing to take advantage of prior statutory revival windows explicitly intended to cover his claims—renders this action uniquely unreasonable and unfair. The extreme nature of Plaintiff's delay, combined with Defendant's severe prejudice and Plaintiff's decision to forego timely revival windows, supports the extraordinary equitable relief of dismissal under laches. Such circumstances exemplify precisely the scenario laches is intended to prevent: a plaintiff sleeping on his rights for decades, thereby subjecting defendants to litigation based upon faded memories, missing witnesses, and absent or degraded evidence.

Thus, even assuming, arguendo, Plaintiff's GMVA claim could otherwise be revived—which Defendant emphatically disputes—the equitable doctrine of laches independently bars Plaintiff's claims. Plaintiff's decades-long delay in pursuing his claims is unreasonable, unjustifiable, and significantly prejudicial to Defendant Diaz. Courts recognize that claims brought after extraordinarily long and unjustifiable delays, particularly in the face of multiple available revival

statutes, undermine the integrity and fairness of judicial proceedings. The Complaint, therefore, must be dismissed pursuant to the doctrine of laches.

## G. Constitutional Issues: The GMVA's Revival Provision Exceeds Legislative Authority and Violates Fundamental Due Process

Plaintiff's invocation of the New York City Victims of Gender-Motivated Violence Protection Law's ("GMVA") revival provision raises serious constitutional concerns, including whether the local revival statute exceeds municipal legislative authority (ultra vires) and whether retroactive revival violates Defendant's fundamental due process rights.

### 1. The GMVA Revival Provision Exceeds New York City's Legislative Authority and is Preempted by State Law

The GMVA's revival provision, enacted by Local Law 2022/021, purports to revive claims otherwise long barred by statutes of limitation. However, New York State's Constitution and statutory scheme impose critical constraints on municipal legislative authority under the doctrine of Home Rule (N.Y. Const. art. IX, § 2). Under Home Rule, local laws are permissible only if they relate to matters of local concern and do not conflict with or are not preempted by state law. The New York Court of Appeals consistently holds that municipal legislation is invalid if: (a) the State Legislature occupies the field, or (b) the local law directly conflicts with state law. See *Jancyn Mfg. Corp. v. County of Suffolk*, 71 N.Y.2d 91, 97 (1987); *Boreali v. Axelrod*, 71 N.Y.2d 1, 13 (1987).

Here, the New York State Legislature explicitly addressed and occupied the field of revival statutes for sexual abuse and assault claims through comprehensive legislation, namely the Child Victims Act ("CVA," CPLR § 214-g) and the Adult Survivors Act ("ASA," CPLR § 214-j). These

statutes explicitly revived expired claims for finite and clearly defined windows—August 14, 2019, through August 14, 2021, for the CVA, and November 24, 2022, through November 24, 2023, for the ASA. These statewide revival provisions demonstrated clear legislative intent to exclusively control and occupy the field of claim revival for sexual offenses.

Judge Lewis A. Kaplan explicitly reaffirmed the preemptive effect of these state statutes in *Parker v. Alexander*, 2025 WL 268436 (S.D.N.Y. Jan. 22, 2025), noting that New York State law fully occupies the field and precludes conflicting local revival statutes. By enacting a conflicting municipal revival provision via Local Law 2022/021, New York City exceeded its delegated legislative authority under Home Rule, impermissibly invading an area exclusively governed by the State Legislature.

Indeed, courts applying the New York State Constitution's Home Rule provisions have consistently struck down municipal laws conflicting with state law or encroaching upon an area of statewide legislative concern. For example, in *Albany Area Builders Ass'n v. Town of Guilderland*, 74 N.Y.2d 372 (1989), the Court of Appeals emphasized that local laws conflicting directly with state statutes or attempting to legislate in an area of statewide interest are ultra vires and invalid. Similarly, the GMVA's municipal revival provision encroaches upon the field clearly occupied by state revival statutes, rendering it ultra vires and invalid under the New York State Constitution's Home Rule provisions.

The Gender-Motivated Violence Act ("GMVA"), codified at N.Y.C. Admin. Code § 10-1101 et seq., was enacted to provide a civil remedy for victims of gender-based violence in response to the Supreme Court's invalidation of the civil remedy provision of the federal Violence Against Women Act in *United States v. Morrison*, 529 U.S. 598 (2000). The legislative history and structure of the GMVA indicate a focus on gender-based violence generally, with an emphasis on adult

victims and without specific reference to the unique context of childhood sexual abuse. In contrast, the New York Legislature enacted the Child Victims Act ("CVA"), N.Y. C.P.L.R. § 214-g, to create a targeted and comprehensive framework for survivors of childhood sexual abuse, extending the statute of limitations and creating a revival window for time-barred claims.

Although some New York state appellate decisions, such as *Ganieva v. Black*, 216 A.D.3d 424 (1st Dep't 2023), and *Engelman v. Rofe*, 194 A.D.3d 26 (1st Dep't 2021), have interpreted the GMVA broadly to apply to both adult and child victims, such holdings do not resolve the question of statutory pre-emption or redundancy when both the GMVA and CVA are invoked for the same underlying conduct. Under principles of statutory interpretation, where a general statute (like the GMVA) overlaps with a more specific statute (like the CVA), the specific statute governs. See *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012.

Accordingly, while the GMVA permits civil claims for gender-motivated violence regardless of the victim's age, its general applicability does not override the CVA's specific and targeted purpose. As held in *Doe v. Indyke*, 465 F. Supp. 3d 452, 465–66 (S.D.N.Y. 2020), courts will defer to the more specific statutory scheme when both apply to the same set of facts. The CVA was crafted to address the distinct needs of childhood abuse survivors—including relaxed pleading standards, tailored limitation periods, and judicial guidance. To allow a GMVA claim to proceed concurrently or in place of a CVA claim risks undermining the legislative intent of the CVA and circumventing its procedural safeguards. Thus, when childhood sexual abuse is at issue, the GMVA should be viewed as pre-empted or supplanted by the more precise legislative mechanism provided under the CVA.

## 2. The Retroactive Revival Violates Fundamental Constitutional Due Process Protections

Separate from the issue of legislative authority, the extraordinary retroactive revival provision within the GMVA violates fundamental constitutional due process rights. The Due Process Clauses of both the New York State Constitution (Article I, Section 6) and the Fourteenth Amendment to the U.S. Constitution prohibit laws that retroactively disturb vested rights or impose unfair burdens upon defendants without adequate justification.

The U.S. Supreme Court has emphasized that due process protections require legislation affecting substantial rights—particularly statutes imposing retroactive liabilities—to be supported by a compelling justification and closely tailored to address specific injustices. See *Landgraf v. USI Film Products*, 511 U.S. 244, 266 (1994) ("The Due Process Clause protects the interests in fair notice and repose that may be compromised by retroactive legislation.").

New York's Court of Appeals similarly applies rigorous scrutiny to revival statutes to ensure compliance with due process protections. In *Matter of World Trade Center Lower Manhattan Disaster Site Litig.*, 30 N.Y.3d 377 (2017), the court emphasized revival statutes must respond to clear injustices and be limited to reasonable, defined timeframes. While the Child Victims Act and Adult Survivors Act explicitly satisfied these criteria, the GMVA's local revival statute does not, as applied here.

Critically, Plaintiff seeks to apply the GMVA retroactively to acts that allegedly occurred between 1983 and 1986—fully 15 years prior to the GMVA's original enactment in 2000. The law creating Plaintiff's substantive cause of action did not exist at the time of the alleged conduct, and the GMVA's revival provision does not explicitly authorize revival of claims predating its original enactment. Courts consistently hold that statutes creating substantive liabilities cannot apply retroactively absent explicit legislative authorization. See *Majewski v. Broadalbin-Perth Cent. Sch.*

*Dist.*, 91 N.Y.2d 577, 584 (1998) ("Retroactivity is not favored in the law… and legislative enactments will not be given retroactive effect unless unequivocally so intended.").

Moreover, retroactive revival statutes are permissible under due process only when enacted to address clear, specific injustices, and when reasonable timeframes are set to balance plaintiffs' interests against defendants' reliance on prior legal standards. Plaintiff Rossello had a clear statutory window provided by the CVA to timely pursue his claims but consciously chose not to use that statutory window. Plaintiff's decision to now invoke a belated municipal revival statute decades after statutory deadlines have passed creates precisely the unfair prejudice and lack of fair notice due process protections prohibit.

Defendant Diaz has a constitutionally protected right to rely on established statutes of limitation and repose. Allowing Plaintiff to retroactively revive long-extinguished claims under a municipal statute enacted decades after the alleged misconduct occurred undermines fundamental principles of notice, fairness, and finality. This severe disruption of Defendant's reliance interests contravenes constitutional due process protections.

### 3. Additional Constitutional Concerns: Exceeding State and Local Authority, Federalism, and Equal Protection

Further, allowing Plaintiff's claims to proceed under the GMVA's municipal revival statute raises significant federalism and separation-of-powers concerns. Although municipalities have broad authority to legislate on matters of local concern, their power does not extend to legislating retroactive substantive rights or remedies explicitly occupied by state legislation. Allowing local

revival statutes such as the GMVA to circumvent or conflict with state-created revival frameworks undermines the carefully calibrated separation of powers between state and local governance.

The GMVA revival provision, as applied in this context, effectively creates an independent substantive liability that conflicts directly with state-created frameworks. Thus, it exceeds municipal legislative authority and undermines established principles of state governance and federalism.

Moreover, while Plaintiff might attempt to argue that the GMVA serves legitimate legislative goals, this does not justify imposing retroactive liability where none previously existed. Any assertion that the GMVA's revival statute seeks to address historical injustices fails in Plaintiff's context, given that Plaintiff explicitly chose not to avail himself of previously provided state revival opportunities. Therefore, the revival as applied to Defendant Diaz serves no compelling governmental purpose sufficient to override fundamental constitutional protections.

In summary, Plaintiff's reliance on the GMVA's local revival provision is constitutionally impermissible on multiple grounds. The GMVA revival provision is ultra vires, as it exceeds municipal authority under Home Rule provisions and conflicts irreconcilably with state revival statutes explicitly occupying the legislative field. Additionally, the retroactive revival of claims arising nearly four decades ago—prior to the GMVA's original enactment—violates fundamental due process rights, undermines fair notice, and disrupts settled reliance interests.

For these independent constitutional reasons, in addition to all previously articulated jurisdictional, procedural, and substantive grounds, Plaintiff's Complaint must be dismissed in its entirety with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

### IV.    CONCLUSION

For each of the independent and compelling reasons set forth above, Plaintiff Roy Rossello's Complaint must be dismissed in its entirety, with prejudice.

First, Plaintiff's attempt to invoke this Court's subject matter jurisdiction under 28 U.S.C. § 1332 is fatally deficient. Plaintiff fails to affirmatively plead citizenship as required under federal diversity jurisdiction standards. Mere allegations of residency are insufficient and cannot sustain Plaintiff's invocation of this Court's limited jurisdiction.

Second, Plaintiff has not established that this Court has personal jurisdiction over Defendant Diaz. Defendant, a lifelong domiciliary of Puerto Rico, lacks ongoing or meaningful contacts with New York sufficient to justify personal jurisdiction, particularly under the strict constitutional requirements articulated by federal and New York courts. Moreover, asserting jurisdiction over Defendant under these decades-old and isolated circumstances violates fundamental due process principles by severely prejudicing Defendant's ability to mount an effective defense.

Third, Plaintiff's claims under the New York City Victims of Gender-Motivated Violence Protection Law ("GMVA") fail on multiple substantive and procedural grounds:

1. Plaintiff's claims are unequivocally time-barred by applicable statutes of limitations. Plaintiff deliberately chose not to pursue claims during the clearly defined statutory revival period provided by New York State's Child Victims Act ("CVA"). His attempt to invoke the GMVA's local revival provision after missing state-sanctioned revival periods is legally impermissible and preempted by state law.

2. Plaintiff's reliance on the GMVA revival statute seeks an impermissible retroactive application of a cause of action created after the alleged misconduct occurred. Such retroactive application violates fundamental due process protections and statutory

interpretation principles that require explicit legislative intent for retroactivity, which the GMVA does not provide.

3. Substantively, Plaintiff fails to plead the critical element of gender-based animus required under the GMVA. Plaintiff's allegations describe generalized exploitation rather than gender-based hostility or hatred specifically targeted by the statute. Absent factual allegations demonstrating the necessary animus, the GMVA claim fails as a matter of law.

Fourth, Plaintiff's Complaint fails to comply with basic federal pleading requirements under Rule 8(a)(3), as it lacks a proper explicit demand for relief. This fundamental procedural defect further warrants dismissal or, at minimum, requires Plaintiff to cure the defect through amendment.

Fifth, Plaintiff's claims are independently barred by the equitable doctrine of laches due to Plaintiff's unreasonable and unjustified delay of nearly four decades. This extraordinary delay severely prejudices Defendant Diaz, undermining the integrity and fairness of judicial proceedings. Allowing Plaintiff's belated claims to proceed would contradict equitable principles fundamental to our justice system.

Finally, the GMVA revival statute as invoked by Plaintiff exceeds New York City's municipal legislative authority and conflicts with explicit state law frameworks governing the revival of sexual abuse claims. The attempted revival of claims that predate the GMVA's original enactment violates fundamental constitutional due process protections by undermining Defendant's settled reliance interests, imposing retroactive liabilities where none previously existed, and failing to satisfy rigorous constitutional scrutiny applicable to revival statutes.

Accordingly, for each of these independently sufficient reasons, Defendant Diaz respectfully requests that this Court grant this Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), dismissing Plaintiff's Complaint in its entirety, with prejudice.

**RESPECTFULLY SUBMITTED** in Miami, Florida, on this 30th day of June 2025

*/s/* **Edwin J. Prado-Galarza**
Edwin J. Prado-Galarza (Bar No. EP8202)
Prado Law Office, LLC
111 N. Orange Ave., Suite 800, Unit 849
Orlando, FL 32801
Phone: (407) 420-7926 / (787)977-1411
Email: pradolaw10@gmail.com
*Attorneys for Defendant Edgardo Diaz Melendez*

### CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to Local Civil Rule 7.1 of the Southern District of New York that the foregoing Memorandum of Law is prepared in 12-point Times New Roman font, with double-spacing and one-inch margins, and contains approximately 8,736 words, excluding the caption, table of contents, table of authorities, and signature block.

### CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2025, a true and correct copy of the foregoing Letter-Motion for Leave to File an Oversized Memorandum of Law was served via ECF and email upon all counsel of record, including:

- Brittany Henderson, Esq. – brittany@cvlf.com
- Brad Edwards, Esq. – brad@cvlf.com
- Dean Kaire, Esq. – dean@cvlf.com

*/s/ Edwin J. Prado-Galarza*