UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Roy Rossello,<br><br>  *Plaintiff*,<br><br>v.<br><br>Edgardo Diaz Melendez,<br><br>  *Defendant*. | Case No.  1:25-cv-01699 (MMG) |

**PLAINTIFF ROY ROSSELLO'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

FACTUAL OVERVIEW ........................................................................................................... 1
ARGUMENT .............................................................................................................................. 3
   I.   THIS HONORABLE COURT HAS SUBJECT MATTER JURISDCTION. ................... 3
   II.   THIS HONORABLE COURT HAS PERSONAL JURISDICTION OVER DIAZ. ......... 6
   III.   PLAINTIFF HAS SUFFICIENTLY PLED A CLAIM UNDER THE GMVA. ................ 7
   IV.   PLAINITFF'S CLAIMS ARE NOT BARRED BY THE DOCTRINE OF LACHES. ..... 9
   V.   THE GMVA IS CONSITUTIONAL AND IS NOT PREEMPTED BY THE CVA. ...... 10
CONCLUSION ......................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Alexander J. v. State*,
   2024 N.Y. Slip Op. 50835 .................................................................................................... 9

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...................................................................................................... 3, 5

*Bell Atlantic v. Twombly,*
   550 U.S. 544 (2007) ........................................................................................................... 5

*Breest v. Haggis*,
   180 A.D. 3d 83 (N.Y. 1st Dept. 2019) ........................................................................... 7, 8

*Broadstone Realty Corp. v. Evans*,
   213 F. Supp. 216 (S.D.N.Y. 1962) ................................................................................... 4

*Colavito v. N.Y. Organ Donor Network, Inc.*,
   438 F.3d 214 (2d Cir. 2006) .............................................................................................. 5

*District of Columbia v. Murphy*,
   314 U.S. 441 (1941) .......................................................................................................... 4

*Doe v. Archdiocese of New York*,
   85 Misc. 3d 1233(A), 228 N.Y.S.3d 423 (N.Y. Sup. Ct. 2025) ...................................... 10

*Doe v. Black*, No. 23-CV-6418 (JGLC),
   2024 WL 4335453, at *3 (S.D.N.Y. Sept. 27, 2024) ...................................................... 10

*Doe v. Schlesinger*,
   2025 N.Y. Slip Op 25149 (Sup. Ct.) .................................................................................. 9

*Hughes v Twenty-First Century Fox, Inc.*,
   304 F. Supp 3d 429 (S.D.N.Y. 2018) ................................................................................ 7

*Jackson v. The Scotts Co.,*
   2008 WL 4355349 (S.D.N.Y. Sept. 24, 2008) ................................................................. 9

*John Birch Soc'y v. Nat'l Broad Co.*,
   377 F.2d 194 (2d Cir. 1967) .............................................................................................. 4

*Kashef v. BNP Paribas S.A.*,
   925 F. 3d 53 (2d Cir. 2019) ........................................................................................... 3, 6

*Wade Park Land Holdings, LLC v. Kalikow*,

21-cv-1657 (LJL), 2022 WL 2479110 (S.D.N.Y. July 6, 2022) .............................................. 10

*Whole Woman's Health v. Jackson*,

   595 U.S. 30 (2021) ................................................................................................................. 5

*Williams v. Boulevard Lines, Inc.*,

   2013 WL 5652589 (S.D.N.Y Sept. 30, 2013) ......................................................................... 9

*Willis v. Westin Hotel Co.*,

   651 F. Supp. 598 (S.D.N.Y. 1986) ..................................................................................... 4, 5

*Wolde Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*,

   166 F. 3d 59 (2d Cir. 1999) .................................................................................................... 5

**Statutes**

N.Y.C. Admin. Code. § 10-1101-1107 ..................................................................................... 2, 7

**Other Authorities**

New York Bill Jacket, 2019 S.B. 6574, Ch. 315 .......................................................................... 10

RAINN. RAINN's Recommendations for Effective Sex Crime Statutes of Limitatio (Final) ...... 7

**Rules**

Fed. R. Civ. P. 8 ............................................................................................................................. 8

Plaintiff, Roy Rossello ("Rossello") submits this memorandum of law in opposition to Defendant, Edgardo Diaz Melendez's ("Diaz"), Motion to Dismiss. [ECF No. 13].

## FACTUAL OVERVIEW

As outlined in Plaintiff's Complaint, Edgardo Diaz was responsible for sexually battering, trafficking, and committing acts of gender-motivated violence against the minor male members of the boy-band, Menudo, including Rossello. Compl. ¶¶ 2, 4, 5. As early as 1977, Diaz sold minor children on the promises of fame, fortune, and success so long as the very young boys promised to do whatever Diaz requested of them, including their submission to crimes of gender-motivated violence. *Id*. ¶ 44. This included Rossello who was a member of the band from 1983 to 1986, wherein he was repeatedly sexually abused by Diaz in multiple jurisdictions across the United States and around the world, including within the Southern District of New York. *Id*. ¶¶ 12, 63.

Beginning in the 1970's, Diaz learned that creating band groups comprised entirely of youth members was a quick path to success in the music industry. *Id*. ¶¶ 15-17. Despite the strategy holding true—as evidenced by Menudo's success—the strategy as applied by Diaz was nothing more than a scheme designed to satiate his own predatory behavior. *See id*. ¶ 19. Diaz would target young boys from poor communities and present their families with a financial contract and a promise to look after the boys as if they were his own. *Id*. ¶¶ 19-20. Once in his clutches and under his control, Diaz would sexually abuse members of Menudo on a consistent basis, including Rossello. *Id*. ¶ 52.

In 1983, Diaz met 13-year-old Roy Rossello at the Padosa headquarters where he was attending a sale of Menudo merchandise. *Id*. ¶ 54. Diaz was immediately enamored with Rossello, and within a week, had already pulled Rossello out of school for the day without his parents' permission to discuss the possibility of him joining Menudo. *Id*. ¶¶ 57-58. Tragically, that same

1

night, Diaz forced Rossello to spend the night at his home and carried out his first of many acts of sexual abuse and gender-motivated violence against Rossello. *Id*. ¶ 59. For nearly three years throughout the duration of Rossello's involvement with Menudo, Diaz would sexually abuse, rape, and subject Rossello to crimes of gender-motivated violence on a near-daily basis. *Id*. ¶ 63. In doing so, Diaz committed a series of crimes, torts, and other prohibited acts against these male children, including but not limited to, crimes of gender-motivated violence committed because of Rossello's gender or on the basis of his gender, and due, at least in part, to an animus based upon his gender. *Id*. ¶ 93.

In response, Diaz claims that: (1) this Honorable Court lacks Subject Matter and Personal Jurisdiction; (2) that Rossello has failed to properly plead a claim under the New York City's Victim of Gender-Motivated Violence Protection Law ("GMVA"); (3) that Plaintiff's claims are barred by the doctrine of laches; and (4) that constitutional issues serve as an impediment to Rossello's underlying claims. Diaz's arguments willfully ignore the serious, specific, and well-pled allegations in the Complaint. In fact, Diaz goes as far to argue that Rossello's claims should be barred because there was an "unreasonable delay" in bringing his claim, despite the well-recognized fact that victims of sexual abuse—especially minor victims—often take years to come forward with their abuse. This was the exact basis for why jurisdictions around the world, including within the Southern District of New York, have enacted statutes and look-back windows to allow victims to receive the justice they deserve. Rossello is tragically just one of many boys who was sexually assaulted and harmed by Diaz's reprehensible conduct and clear crimes of gender-motivated violence. The Court should reject Diaz's efforts to escape liability for his intentional and willful conduct at this early stage in the litigation given the clear allegations in the Complaint, and as such, it should deny the Defendant's motion.

**ARGUMENT**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face….A Claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The Court must "accept[] all factual allegations in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor." *Kashef v. BNP Paribas S.A.*, 925 F. 3d 53, 58 (2d Cir. 2019). Drawing all reasonable inferences in Rossello's favor, Diaz has failed to demonstrate that Rossello has failed to state a claim. Furthermore, while the constitutionality of the GMVA as it applies to cases filed following the closing of the CVA is being presented to the Second Circuit Court of Appeals, as of the date of this filing, the GMVA remains fully constitutional, enforceable, and is actively being applied in civil lawsuits in this jurisdiction. At this time, and in light of the law as it currently stands, Plaintiff respectfully requests this Honorable Court deny Defendant's Motion to Dismiss.

**I.    THIS HONORABLE COURT HAS SUBJECT MATTER JURISDCTION.**

Plaintiff's Complaint adequately alleges a basis for subject matter jurisdiction over his claim. Without any supporting law, Defendant frivolously attempts to argue that Plaintiff's allegations related to subject matter jurisdiction are improper because: (1) Plaintiff has alleged residency on the part of the Diaz and Rossello and not domicile; and (2) Plaintiff's well-pled allegation that the amount in controversy exceeds $75,000 is conclusory. Def. Mtn. at 12-13. Defendant asks this Court to depart from the well-recognized pleading requirements, and instead apply a new, heightened standard without any legal support for the same.

Under the diversity citizenship statute, a district court maintains jurisdiction over all civil

actions where the matter in controversy exceeds $75,000, exclusive of interests and costs, and is between citizens of different states. 28 U.S.C. § 1332. Defendant relies on *John Birch Soc'y v. Nat'l Broad Co.*, for a single sentence that states "[r]esidence alone is insufficient to establish domicile for purposes of diversity jurisdiction." 377 F.2d 194, 199 (2d Cir. 1967). What Defendant neglects to include in his briefing are the clear distinguishing facts from the instant case. In *John Birch Soc.*, the two parties were corporations, rendering a wholly different analysis for the determination of a domicile than that of an individual. *See id*. at 198 (recognizing that a corporation's domicile can be its principal place of business or state of incorporation). However, with respect to a domicile for individuals—such as in the instant action—it is well-established that the citizenship of an individual is equivalent to their domicile. *Willis v. Westin Hotel Co.*, 651 F. Supp. 598, 601 (S.D.N.Y. 1986) (internal citations omitted). In fact, an individual's residence at the time a lawsuit is commenced provides *prima facie* evidence of their domicile. *Willis*, 651 F. Supp. at 601; *see also District of Columbia v. Murphy*, 314 U.S. 441 (1941); *Broadstone Realty Corp. v. Evans*, 213 F. Supp. 216, 265 (S.D.N.Y. 1962). Despite every court in the country— including this Honorable Court—recognizing this brightline rule, Defendant asks this Court to find that Plaintiff's allegations regarding the same are "vague." Def. Mtn. at 12. To be clear, Plaintiff specifically alleges the following facts as part of his Complaint:

> **7. This Court has jurisdiction over the dispute pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) as Plaintiff and Defendant are citizens of different states and/or jurisdictions and the amount in controversy exceeds $75,000.00 exclusive of interests and costs.**
>
> **…**
>
> **11. Plaintiff, Roy Rossello, is currently a resident of the State of Florida.**
>
> **12. At all times material, Edgardo Diaz Melendez (hereinafter "Diaz") was a citizen of the United States and a resident of Puerto Rico. Diaz was a man of extraordinary wealth who travelled across the United States regularly, including in New York, New York (within the Southern District of New York).**

4

Given that an individual's residence at the time a lawsuit is commenced provides *prima facie* evidence of their domicile, Plaintiff has satisfied the pleading requirements necessary to demonstrate complete diversity exists. *See Willis*, 651 F. Supp. at 601.

Diaz further attempts to argue that Plaintiff's allegations in the Complaint that the amount in controversy exceeds $75,000—the second requirement to establish diversity citizenship—is a conclusory assertion. Def. Mtn. at 13. A conclusory statement is a type of assertion that lacks the necessary factual support to be considered valid in legal context because it presents a conclusion without providing the underlying facts or evidence to substantiate it. *See generally*, *Ashcroft* 556 U.S. at 664; *Bell Atlantic v. Twombly,* 550 U.S. 544, 590 (2007); 560, *Whole Woman's Health v. Jackson*, 595 U.S. 30, 58 (2021). A party invoking federal jurisdiction must show by a "reasonable probability" that the amount-in-controversy requirement is satisfied. *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006). Rossello does not merely allege in conclusory fashion that Diaz "sexually abused" him—which under the standard articulated in *Colavito* would have likely sufficed—instead, Rossello describes how Diaz targeted and preyed upon young boys, including Rossello, causing him to be sexually abused, raped, and subjected to crimes of gender-motivated violence all over the world including in New York City. Am. Compl. ¶¶ 2,4, 5, 18, 19, 28, 30, 37, 51, 52, 58, 59, 64-84. These allegations are anything but conclusory.

While Courts recognize a rebuttable presumption that the face of the complaint is a good-faith representation of the actual amount in controversy, in order to rebut that presumption, the defendant must show that the complaint "was so patently deficient as to reflect a legal certainty that [the plaintiff] could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums." *Colavito*, 438 F.3d at 214 (citing *Wolde Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F. 3d 59, 63 (2d Cir. 1999). Defendant has failed to

make any such showing here, nor would such a showing even be possible given the depravity and heinous conduct of the sexual crimes Diaz subjected Rossello to while he was a minor child. Given that from the face of the Complaint, it is apparent that both Diaz and Rossello are diverse from one another, and the amount in controversy exceeds $75,000 exclusive of interest and costs, this Honorable Court has subject matter jurisdiction over Rossello's claim.

## II.     THIS HONORABLE COURT HAS PERSONAL JURISDICTION OVER DIAZ.

Defendant misapplies the law when attempting to argue this Honorable Court lacks personal jurisdiction for Edgardo Diaz's tortious conduct in the Southern District of New York. Defendant seemingly recognizes the clear basis for personal jurisdiction under New York's Long Arm Statute; however, states that Defendant denies such allegations. This is not a basis to contest personal jurisdiction at this stage in the litigation as the Court must "accept[] all factual allegations in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor." *Kashef*, 925 F. 3d at 58.

Defendant then attempts to argue that exercising personal jurisdiction over Diaz raises constitutional due process concerns. Def. Mtn. at 14-15. Again, Defendant seemingly recognizes the clear basis for personal jurisdiction but asks this Court to not accept the plaintiff's allegations as true. *See* Def. Mtn. at 14 ("While Plaintiff's allegations, if accepted as true, theoretically might satisfy the minim contacts standard…").  Instead, the Defendant improperly argues that Diaz's lack of continuous contact with the forum state of New York—since repeatedly abusing Rossello in New York for three years—makes it unreasonable for him to defend such an action in the state where he perpetrated abuse because significant time has passed. Def. Mtn. at 15. Moreover, Diaz, attempting to stand in the shoes of this Honorable Court, argues that the forum state's interests in adjudicating this action are minimal given the events are decades old and could have been satisfied

by prior legislative actions. *Id*. As the Court is aware, this is simply an incorrect application of the law by Defendant who further chooses to neglect the exact reasons why those prior legislative actions and the GMVA were enacted in the first place.[1] By sexually abusing, raping, and subjecting Rossello to crimes of gender-motivated violence in New York City, and within the Southern District of New York, Diaz has availed himself to the jurisdiction.

### III.   PLAINTIFF HAS SUFFICIENTLY PLED A CLAIM UNDER THE GMVA.

To state a claim under the GMVA, Rossello was required to allege that: "(1) the alleged act constitutes a misdemeanor or felony against the plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of plaintiff's gender; (4) in part because of animus against plaintiff's gender; and (4) [sic] resulted in injury." *Hughes v Twenty-First Century Fox, Inc.*, 304 F. Supp 3d 429, 455 (S.D.N.Y. 2018). It seems that there would be no dispute here as to the fact that the allegations made by Plaintiff against Defendant constitute misdemeanors or felonies against Diaz that present a serious risk of physical injury to Rossello.

As to the third element, even Diaz recognizes the decision reached by the *Breest* court that held allegations of rape and sexual assault are inherently sufficient to state a claim under Victims of Gender-Motivated Violence Protection Law because those types of crimes are motivated, at least in part, by animus based on the victim's gender. *Breest v. Haggis*, 180 A.D. 3d 83, 84 (N.Y. 1st Dept. 2019). If a plaintiff's pleading burden would be sufficient solely with a limited allegation of a sexual assault, Rossello has gone above and beyond satisfying these requirements in his Complaint. Rossello has alleged that every sex crime committed by Diaz was targeted specifically at male, minor children based on their gender alone. Compl. ¶¶ 83, 84, 93, 94. The Complaint is

---

[1] RAINN. Microsoft Word - RAINN's Recommendations for Effective Sex Crime Statutes of Limitation (Final) .docx "The need for criminal statutes of limitations reform has never been clearer. As our understanding of sexual violence evolves, so too does our understanding of its effects…. For some, a delayed decision to report is the product of the very real and devastating physical and psychological effects of the crime.

devoid of any crimes committed against females, only furthering the argument that Diaz specifically targeted young boys like Rossello. These allegations alone are sufficient to state a claim under the GMVA:

> **"Rape and sexual assault are, by definition, actions taken against the victim without the victim's consent. Without consent, sexual acts such as those alleged are a violation of the victim's bodily autonomy and an expression of the perpetrator's contempt for that autonomy. Coerced sexual activity is dehumanizing and fear-inducing. Malice or ill will based on gender is apparent from the alleged commission of the act itself. Animus inheres where consent is absent."**

*Breest*, 180 A.D. 3d at 84. Plaintiff's allegations of the heinous crimes that Diaz subjected him to evince malice or ill will based on gender from the alleged commission of the act itself. However, Plaintiff goes far beyond the minimal pleading requirements and very specifically details allegations of disturbing sexual assaults by Diaz in New York City throughout his Complaint. Compl. ¶¶ 64-87.

Diaz next alleges that the Complaint failed to include a proper demand for relief as required by Rule 8(a)(3). Defendant willfully ignores the clear allegations in Plaintiff's Complaint that contain a prayer for relief:

> **"97. As a direct and proximate result of Edgardo Diaz's violations of GMVA, Rossello, has in the past suffered and, in the future, will continue to suffer physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of his privacy and a loss of his capacity to enjoy life, as well as other damages. Rossello incurred medical and psychological expenses and he will in the future suffer additional medical and psychological expenses. These injuries are permanent in nature and Rossello will continue to suffer these losses in the future.**
>
> **98. This cause of action is timely under the GMVA, because Diaz's crimes were motivated on the basis of Rossello's gender.**
>
> **WHEREFORE, Plaintiff demands judgment against Edgardo Diaz for compensatory and general damages, punitive damages, attorney's fees, and such other and further relief as this Court deems just and proper. Plaintiff**

**hereby demands trial by jury on all issues triable as of right by a jury."**

Paragraph 97 of the Complaint speaks for itself and is followed by a prayer for relief just two paragraphs later. To the extent that Defendant, after reading the Complaint and recognizing the well-pled prayer for relief, attempts to argue that Plaintiff was required to provide an exact computation as to the non-economic damages sought—that argument is also misplaced as the exact computation must be determined by the trier of fact. Plaintiff cannot, here, invade the province of the jury in deriving any calculation that is within the sole discretion and the exclusive legal obligation of the triers of fact. *See Williams v. Boulevard Lines, Inc.*, 2013 WL 5652589 (S.D.N.Y Sept. 30, 2013) (citing *Jackson v. The Scotts Co.,* 2008 WL 4355349, at *1 (S.D.N.Y. Sept. 24, 2008) (noting that any calculation that may be provided for non-economic damages would not be of much use to anyone). Accordingly, Plaintiff has successfully pled a claim under the GMVA.

## IV.  PLAINITFF'S CLAIMS ARE NOT BARRED BY THE DOCTRINE OF LACHES.

Diaz contends Rossello's claims are barred by the doctrine of laches due to unreasonable delay and severe prejudice. Courts have repeatedly held that laches cannot be asserted as a defense when claims are brought pursuant to a lookback window—specifically related to sexual abuse. *See e.g.*, *Doe v. Schlesinger*, 2025 N.Y. Slip Op 25149 (Sup. Ct.) (holding that laches is inapplicable as an affirmative defense to an action filed within the statute of limitations noting that many victims of sexual abuse do not come forward immediately); *Alexander J. v. State*, 2024 N.Y. Slip Op. 50835 ("Notably, the Child Victims Act recognizes the justifiable delay often associated with coming to terms with and reporting sexual abuse and that such claims are sometimes brought long after the childhood abuse or trauma occurred, as is the instant Claim brought after approximately 43 years (*S.H. v. Diocese of Brookyln*, 205 A.D.3d at 194)). Surely, it was not the legislative intent to allow laches to bar these claims").

It seems important to highlight that the sole basis for state and local legislatures creating look-back windows is due to the well-recognized and accepted fact that often times, victims of abuse—especially minor children—take years to come forward and disclose that same abuse. *See* New York Bill Jacket, 2019 S.B. 6574, Ch. 315 ("Statutes of limitations on sexual offense cases impose a ticking clock on how long victims are able to come forward if they want to seek charges. For crimes of sexual violence in particular, the clock ticks against the trauma and culture of silence that prevents victims from speaking out"). As is widely understood and accepted, it would be unjust and inconsistent with the exact purpose of lookback windows to allow Diaz to escape all liability because of the "prejudice to Diaz" solely because significant time has passed since he subjected this very young, minor child to heinous sexual crimes.

## V.     THE GMVA IS CONSITUTIONAL AND IS NOT PREEMPTED BY THE CVA.

Lastly, Defendant comingles the arguments as to the constitutionality of the GMVA while arguing that Plaintiff failed to sufficiently plead a GMVA claim. In doing so, Defendant seems to overlook the fact that an express purpose of the GMVA is to revive previously time-barred claims. *See, e.g.*, *Doe v. Archdiocese of New York*, 85 Misc. 3d 1233(A), 228 N.Y.S.3d 423 (N.Y. Sup. Ct. 2025). More importantly, as clearly and instructively articulated by S.D.N.Y. Judge Clarke, the GMVA Revival Statute is not preempted by the CVA and conflict preemption does not bar same. *Doe v. Black*, No. 23-CV-6418 (JGLC), 2024 WL 4335453, at *3 (S.D.N.Y. Sept. 27, 2024).

## CONCLUSION

Should the Court find that Plaintiff has not sufficiently pled facts to support his claim under the GMVA, Rossello seeks leave to amend his complaint to do so. *See, e.g.*, *Wade Park Land Holdings, LLC v. Kalikow*, 21-cv-1657 (LJL), 2022 WL 2479110 at *3 (S.D.N.Y. July 6, 2022) (indicating that the Second Circuit "strongly favors liberal grant of an opportunity to replead after

10

dismissal of a complaint under Rule 12(b)(6)" and that leave should be granted when the court "cannot say that any amendment would be futile.").

Notwithstanding, for the reasons delineated herein, the Court should deny Diaz's Motion to Dismiss Plaintiff's Complaint.

Dated: July 14, 2025

Respectfully Submitted,

/s/ *Brittany Henderson*
Bradley Edwards
Brittany Henderson
Dean Kaire

**EDWARDS HENDERSON**
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
Telephone: (954) 524-2820
Fax: (954) 524-2822
Email: brad@cvlf.com
          brittany@cvlf.com
          dean@cvlf.com
*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to Local Civil Rule 7.1 of the Southern District of New York that the foregoing Memorandum of Law is prepared in 12-point Times New Roman font, with double-spacing and one-inch margins, and contains approximately 3449 words, excluding the caption, table of contents, table of authorities, and signature block.

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2025, a true and correct copy of the foregoing Memorandum of Law was served via ECF and email upon all counsel of record. Edwin J. Prado-Galarza, pradolaw10@gmail.com.

/s/ *Brittany N. Henderson*